UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

GREGORY CAIN,

    Defendant.

Case No. 3:22-cr-88

District Judge Michael J. Newman

---

**ORDER DENYING DEFENDANT GREGORY CAIN'S MOTION TO SUPPRESS (DOC. NO. 5)**

---

This case is before the Court on Defendant Gregory Cain's ("Cain") motion to suppress. Doc. No. 5. Cain maintains that while there was probable cause for the officers' search warrant, they lacked probable cause to arrest him. Doc. No. 13 at PageID 112, 114. The Court held an evidentiary hearing on Cain's motion on October 31, 2022 and heard testimony from Dayton Police Detective Tyler Orndorff. Doc. No. 11 at PageID 25, 27–28. Cain filed a post-hearing brief[1] (Doc. No. 13), and the Government responded in opposition (Doc. No. 16). Cain did not submit a reply brief, so this matter is ripe for review. For the reasons that follow, the Court denies Cain's motion.

## I.     BACKGROUND

In early 2021, a confidential informant conveyed to Officer Orndorff, who also works as a

---

[1] Cain's initial motion alleged Fourth, Fifth, Sixth, and Fourteenth Amendment violations. Doc. No. 5 at PageID 11–12. Cain conceded at the conclusion of the evidentiary hearing that he made no statements subject to Fifth Amendment protection. Doc. No. 11 at PageID 101–02. Moreover, his post-hearing brief only asserts Fourth Amendment violations. Doc. No. 13 at PageID 118. Accordingly, the Government limited its response to the alleged Fourth Amendment violations. *See* Doc. No. 16 at PageID 121 n.1. Thus, the Court assumes Cain has waived or withdrawn his arguments under the Sixth and Fourteenth Amendments, and limits this Order to addressing Cain's allegations of Fourth Amendment violations. *Cf. McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived" (citations omitted)).

Task Force Officer with the FBI, that an individual sold drugs around Main Street and Ridge Avenue in Dayton. Doc. No. 11 at PageID 29. This prompted Officer Orndorff and another officer, Dayton Police Detective Josh Bowling, to begin an investigation. *Id.* The officers sent a confidential informant to perform a controlled buy. *Id.* at PageID 29–30. They learned through the purchase that the individual selling drugs drove a white Mazda 6 and, following the sale, returned to a house at 316 Westwood Avenue. *Id.* at PageID 30–31. Using a centralized database, the officers ran the Mazda's license plate and "found that an individual by the name of Clay Swanson" drove it, and they confirmed Clay Swanson's photograph matched the individual who conducted the controlled buy. *Id.* at PageID 31. The officers conducted five additional controlled buys from Swanson, though only details of three buys were included in the search warrant affidavit. *Id.* at PageID 32. Of the three included in the affidavit, two occurred at 316 Westwood Avenue and a third occurred through a vehicle that had left 316 Westwood Avenue. *Id.*

During surveillance conducted around the time of the purchases, the officers noticed another individual, later identified as Cain (*id.* at PageID 73), who repeatedly left the house through the front door, crossed the street, passed between two vacant properties, and turned into an alley. *Id.* at PageID 33. The officers then focused their surveillance on Cain and witnessed him conducting at least five or six hand-to-hand transactions with people in cars waiting in the alley. *Id.* at PageID 33–34. The officers believed these to be drug transactions, based on their training and experience. *Id.* at PageID 34. The officers attempted to identify Cain through the license plates on the car he drove but failed because the car had dealer plates. *Id.* at PageID 35.

The officers obtained a search warrant for 316 Westwood Avenue on May 10, 2021 and executed it on May 13, 2021. *Id.* at PageID 35, 37. During surveillance on May 13, prior to executing the warrant, they witnessed a person in a yellow jacket, subsequently identified as Cain (*id.* at PageID 40), leave the house through the front door, cross the street, and pass between the

vacant houses. *Id.* at PageID 38. They then lost sight of him, before he re-appeared and re-entered 316 Westwood Avenue through the front door. *Id.*

When the officers approached the house to execute the warrant, the person the officers recognized as Clay Swanson exited the house. *Id.* at PageID 38–39. The officers commanded him to lay on the ground, which he did. *Id.* Then, Cain, wearing the yellow jacket, exited the house through the front door and after seeing the officers with Swanson, "abruptly ran inside the house, securing both the front door and the security door by locking them." *Id.* The officers reacted by forcing into the house, where they saw Cain in the dining room and detained him. *Id.* at PageID 40. They searched his person and found two iPhones and a set of keys for 316 Westwood Avenue. *Id.* at PageID 71–72, 94. The officers had, by this point, identified Cain as the person who had previously conducted the hand-to-hand transactions with occupants of cars in the alley. *Id.* at PageID 73. When the officers advised Cain of his *Miranda* rights, he refused to respond and did not make any statements. *Id.* at PageID 73, 100–01.

The officers proceeded to search the house and found: money; a money counter; a flip phone cell phone; fentanyl and methamphetamine in sizes beyond personal use; "suspected narcotics;" a digital scale; plastic baggies; a card with drug residue (often used to mix drugs with a cut); a bullet blender (often used to mix drugs with a cut); two firearm boxes and ammunition (but no firearms). *Id.* at PageID 43–44, 49–63. The officers found that the kitchen had no appliances other than a microwave and little food in the cabinets. *Id.* at PageID 51, 56. Additionally, they found an energy bill in Cain's name. *Id.* at PageID 64.

Cain now moves to suppress the evidence and observations gained from his search and arrest, asserting that the officers lacked probable cause to arrest him while he was in the house at 316 Westwood Avenue. Doc. No. 13 at PageID 112, 118. Cain does not object to the underlying search warrant for the house. *Id.* at PageID 114. The Government responds that the officers did,

in fact, have probable cause to arrest Cain. Doc. No. 16 at PageID 136.

## II. FOURTH AMENDMENT STANDARD

The Fourth Amendment states,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "The Fourth Amendment protects individuals against 'unreasonable searches and seizures.'" *United States v. Bateman*, 945 F.3d 997, 1005 (6th Cir. 2019) (citations omitted). "Because arrests are 'seizures' of 'persons,' they must be reasonable under the circumstances." *District of Columbia v. Wesby*, --- U.S. ---, 138 S. Ct. 577, 585 (2018) (citing *Payton v. New York*, 445 U.S. 573, 585 (1980)).

While the Fourth Amendment does not explicitly identify a remedy upon violation, "the 'principal judicial remedy' for Fourth Amendment violations" is "the exclusionary rule . . . [which] bars courts from allowing unlawfully seized evidence to be used in a criminal trial[.]" *United States v. Elmore*, 18 F.4th 193, 199 (6th Cir. 2021) (quoting *Utah v. Strieff*, 579 U.S. 232, 237 (2016)) (citation omitted).

A defendant may file a pretrial motion asserting a Fourth Amendment violation and seeking suppression of unlawfully seized evidence. *See* Fed. R. Crim. P. 12(b)(3)(C). Defendants carry the burden to show "a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Feldman,* 606 F.2d 673, 679 n.11 (6th Cir. 1979)).

## III. ANALYSIS

Cain's motion to suppress fails because the officers had probable cause to arrest him. Probable cause exists if, at the time of the arrest, "the facts and circumstances within [the officers']

4

knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *United States v. Dotson*, 49 F.3d 227, 230 (6th Cir. 1995) (citations omitted); s*ee also Maryland v. Pringle*, 540 U.S. 366, 371 (2003) ("The probable [] cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances" (citations omitted)); *United States v. Harris*, 255 F.3d 288, 292 (6th Cir. 2001) ("This Court has defined probable cause as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion'" (citing *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990))).

"To determine whether an officer had probable cause for an arrest, '[the Court] examine[s] the events leading up to the arrest, and then decide[s] 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Wesby*, 138 S. Ct. at 586 (citing *Pringle*, 540 U.S. at 371). Here, the officers, through controlled buys and surveillance, learned that the house at 316 Westwood Avenue was being used for drug sales and that an unknown individual would repeatedly leave the house for a nearby alleyway and engage in hand-to-hand transactions with occupants of awaiting cars. Doc. No. 11 at PageID 32–33. The officers, relying on their expertise in drug crimes, recognized that the transactions were likely drug purchases. *Id.* at PageID 33–34; *see Brown v. Texas*, 443 U.S. 47, 52 n.2 (1979) (crediting the "observations of a trained, experienced police officer who is able to perceive and articulate meaning in given conduct"). On the day the officers executed the search warrant, they again saw the same individual leave the house at 316 Westwood Avenue. Doc. No. 11 at PageID 38. He wore a yellow jacket, followed the same path to the alleyway, and shortly after, returned home. *Id.*

5

When the officers began executing the search warrant, they saw Cain, wearing the yellow jacket, and concluded that he was the same individual they had previously surveilled as he repeatedly walked to the nearby alley and engaged in hand-to-hand interactions. *Id.* at PageID 39, 73. Thus, the officers had probable cause to arrest Cain because their observations provided them with sufficient information to support a reasonable inference that the had engaged in illegal drug dealing. *See United States v. Romero*, 452 F.3d 610, 617–18 (6th Cir 2006) (finding probable cause to arrest where although defendant's identity was not confirmed, the officers reasonably inferred, based on known facts that defendant was involved in a drug-dealing scheme with his co-defendant); *Simley v. City of Ferndale*, No. 97-1858, 1999 WL 196504, at *3 (6th Cir. Jan. 13, 1999) (finding the officers had probable cause to arrest because defendant resembled the robber and his car resembled the getaway car used).

The existence of probable cause is further established by the fact that Cain, upon seeing the officers, ran back inside the house and locked the doors. "'Unprovoked flight upon noticing the police . . . is certainly suggestive' of wrongdoing and can be treated as 'suspicious behavior' that factors into the totality of the circumstances." *Wesby*, 138 S.Ct. at 587 (cleaned up) (*citing Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000)); *see Dotson*, 49 F.3d at 231 ("[Defendant's] efforts to flee, coupled with [the] Detective['s] reasonable suspicion that [defendant] was involved in criminal activities, established probable cause to arrest [defendant]"); *Romero*, 452 F.3d at 618 (finding that defendant's "nervous, furtive behavior provides further support for a prudent person's reasonable belief" of involvement in criminal activity).

Notably, "courts have permitted warrantless home arrests for major felonies if identifiable exigencies, independent of the gravity of the offense, existed at the time of the arrest." *Welsh v. Wisconsin*, 466 U.S. 740, 752 (1984) (citations omitted). While, here, the officers already had a search warrant to enter 316 Westwood Avenue, their forcible entry to arrest Cain without a warrant

6

is further supported because Cain ran back into the house and locked the doors, creating an exigency due to the potential destruction of evidence. Doc. No. 11 at PageID 89–90, 100; *see United States v. Renfro*, 620 F.2d 569, 575 (6th Cir. 1980) ("[O]fficers made a forcible entry into the residence for the purpose of making the arrests and preventing the further destruction of evidence which the officers had reason to believe was on the premises[]" only after defendants ran upstairs and appeared to be destroying evidence).

The Court agrees with Cain that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search [or arrest] that person." Doc. No. 13 at PageID 114 (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). Rather, "a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Ybarra*, 444 U.S. at 91. Here, the officers had probable cause as to Cain. Specifically, the officers previously witnessed Cain engage in multiple transactions that the officers reasonably believed to be drug transactions; they had evidence connecting him to the active drug dealing at 316 Westwood Avenue;[2] and, once he saw the officers as he exited the house, they saw him bolt back into the house and lock the doors.[3] *See* Doc. No.

---

[2] It does not matter that the search warrant the officers possessed did not extend to Cain. An "arrest without a warrant does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)); *see also Gerstein v. Pugh*, 420 U.S. 103, 113 (1975) ("[A] magistrate's review of the factual justification prior to any arrest . . . would constitute an intolerable handicap for legitimate law enforcement." (citations omitted)).

[3] The officers' activity could also be justified pursuant to *Michigan v. Summers*, because they may detain individuals present in a residence subject to a search warrant in order to execute that warrant. *See* 452 U.S. 692, 705 (1981) ("[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted"); *but see Bailey v. United States*, 568 U.S. 186, 201 (2013) ("Once an occupant is beyond the immediate vicinity of the premises to be searched, the search-related law enforcement interests are diminished and the intrusiveness of the detention is more severe"). Here, the officers entered 316 Westwood Avenue to execute the search warrant, saw Cain, detained him, and placed him in the police cruiser. Doc. No. 11 at PageID 90–91. However, it is ambiguous whether the cruiser was located within the immediate vicinity. *Id.* Because it is possible to find the officers' action permissible on other grounds, the Court needs not reach this issue.

11 at PageID 32–33, 39, 73.  Thus, the officers had "concrete facts from which they [could] infer a probability that illegality has occurred[,]" establishing probable cause to arrest Cain.  *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998).

## IV.   CONCLUSION

For the aforementioned reasons, the Court **DENIES** Cain's motion.  Doc. No. 5.

**IT IS SO ORDERED.**

 May 12, 2023                                             s/Michael J. Newman                   
                                                                   Hon. Michael J. Newman
                                                                   United States District Judge